UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LORI V.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01498-JMS-DML |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Lori V. applied for disability insurance benefits ("DIB") from the Social Security

Administration ("SSA") on February 3, 2017, alleging an onset date of July 1, 2009. [Filing No.

11-2 at 11.] Her application was initially denied on April 20, 2017, [Filing No. 11-4 at 6], and

upon reconsideration on July 20, 2017, [Filing No. 11-4 at 16]. Administrative Law Judge Therese

Tobin (the "ALJ") conducted a hearing on April 18, 2019. [Filing No. 11-2 at 32-50.] The ALJ

issued a decision on May 23, 2019, concluding that Lori V. was not entitled to receive benefits.

[Filing No. 11-2 at 8-19.] The Appeals Council denied review on April 1, 2020. [Filing No. 11-

2 at 2.] On May 27, 2020, Lori V. timely filed this civil action asking the Court to review the

denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the
recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States courts, the Southern District of Indiana has opted to use
only the first name and last initial of non-governmental parties in its Social Security judicial review
opinions.

# I.
## STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

(1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all

factual issues have been resolved and the 'record can yield but one supportable conclusion.'"  *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.

### BACKGROUND

Lori V. was 47 years old on the date she was last insured.[2]  [Filing No. 11-2 at 18.]  She has earned a GED, as well as a certification to be a pharmacy technician.  [Filing No. 11-6 at 4.] She has previously worked as a driver, factory laborer, pharmacy technician, and receptionist. [Filing No. 11-6 at 4.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Lori V. was not disabled.  [Filing No. 11-2 at 19.]  Specifically, the ALJ found as follows:

- At Step One, Lori V. had not engaged in substantial gainful activity[4] during the period at issue.  [Filing No. 11-2 at 13.]

- At Step Two, Lori V. "had the following severe impairments: rupture of [her] rotator cuff and disorders of the back, discogenic and degenerative."  [Filing No. 11-2 at 13 (citation omitted).]

- At Step Three, Lori V. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 11-2 at 13.]

---

[2] The ALJ determined that Lori V. last met the insured status requirements of the Social Security Act on December 31, 2014, the date she was last insured.  [Filing No. 11-2 at 13.]  Lori V. must prove the onset of disability on or before that date to be eligible for DIB.  *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131.  The ALJ's subsequent findings were limited to the period at issue beginning with the alleged disability onset date, July 1, 2009, through the date she was last insured.  [*See, e.g.*, Filing No. 11-2 at 13.]

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

- After Step Three but before Step Four, Lori V. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. She can frequently balance, kneel, crouch, and crawl. She can have occasional exposure to unprotected heights and dangerous machinery." [Filing No. 11-2 at 14.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Lori V.'s RFC, she was capable of performing her past relevant work as a pharmacy technician as the occupation is generally performed. [Filing No. 11-2 at 17-18.]

- Despite findings at Step Four that would end the analysis, proceeding to Step Five in the alternative, relying on the VE's testimony and considering Lori V.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through her date last insured in representative occupations such as a sorter, assembler, and packer. [Filing No. 11-2 at 18-19.]

### III.
#### DISCUSSION

Lori V. argues that the ALJ erred: (1) by failing to evaluate the evidence of Lori V.'s migraines and related syncopal episodes; and (2) in evaluating her statements concerning her subjective symptoms. The Court will consider the arguments as necessary to resolve the appeal.

**A. Migraines and Syncopal Episodes**

Lori V. asserts that the ALJ found only two severe impairments at Step Two: a rotator cuff injury and disorders of the spine. [Filing No. 13 at 15.] Lori V. contends that the ALJ's analysis of the medical record was limited to those impairments. [Filing No. 13 at 15.] She contends further that while the ALJ briefly mentioned that Lori V. testified that she had frequent headaches, the ALJ completely ignored the medical evidence concerning her migraine headaches and related syncopal episodes. [Filing No. 13 at 15.]

The Commissioner contends that the claimant has the burden at Steps One though Four. [Filing No. 14 at 5-6.] The Commissioner contends further that the ALJ made as favorable of a finding at Step Two as she could have by finding at least one severe impairment. [Filing No. 14

at 6.]   The Commissioner asserts that the ALJ's subsequent RFC finding accounted for Lori V.'s severe and non-severe impairments.   [Filing No. 14 at 6.]   The Commissioner argues that Lori V. has not established that any further, specific limitations were warranted, the ALJ based her RFC finding on the record as a whole rather than any one medical opinion, she reasonably weighed the opinion evidence, the RFC accounted for Lori V.'s headaches, and no medical source assessed any greater, relevant limitations than the ALJ found.   [Filing No. 14 at 6-10.]

In reply, Lori V. argues that migraines do not cause any specific functional deficit that can be accommodated by typical exertional and/or non-exertional limitations—they incapacitate an individual's ability to perform work-related tasks.   [Filing No. 15 at 2.]   She contends that the Commissioner's argument that the ALJ considered Lori V.'s migraines when assessing her RFC is not supported by the decision, which never mentions migraines and mentions headaches only once. [Filing No. 15 at 2-3.]

As stated in the standard of review section, the ALJ cannot ignore an entire line of evidence. The ALJ must demonstrate for a reviewing court that she considered potentially dispositive evidence.   *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985).   Lori V. testified that she pursued disability because she was missing too much work related to migraines and episodes of passing out.   [Filing No. 11-2 at 36.]   She described that she had exhausted all accumulated time off in her last job, including any protection provided to her by the FMLA.   [Filing No. 11-2 at 39.] She testified that even working a part-time schedule, she was missing about two to three days of work per month.   [Filing No. 11-2 at 40.]

The ALJ summarized Lori V.'s allegations, including that headaches prevented her from working.   [Filing No. 11-2 at 15.]   However, the ALJ did not reference any of the relevant medical evidence.   The ALJ also did not explain how she reached her material conclusions concerning the

line of evidence. The Court will address but some of the evidence that should have been discussed by the ALJ but was not.

On November 22, 2008, when Lori V. was last employed, she went to the emergency room after passing out at work. [Filing No. 11-7 at 37.] She described having chronic migraines for many years—including one that day—for which she took multiple, daily prophylactic medications. [Filing No. 11-7 at 37.] She reported that recently her headaches had increased in severity and frequency to nearly every day. [Filing No. 11-7 at 38.] She was diagnosed with a syncopal episode and migraine. [Filing No. 11-7 at 39.]

On November 11, 2012, Lori V. visited the emergency room after passing out while shopping in a store. [Filing No. 11-10 at 118.] She described developing a global headache after regaining consciousness, having past episodes in conjunction with migraines, and having tried numerous medications for her headaches without relief. [Filing No. 11-10 at 118.] The attending physician thought her syncopal episodes might be related to her migraines. [Filing No. 11-10 at 119.] [5]

On September 9, 2016, Lori V. visited the emergency room reporting passing out each of the past two days, making four total episodes in the last two weeks, which she described as "typical." [Filing No. 11-10 at 95.] Objective testing was unremarkable. [Filing No. 11-10 at 96.] The attending physician noted that Lori V. had "significant thorough workups in the recent past" by neurology and cardiology that hadn't revealed any abnormalities. [Filing No. 11-10 at 96.]

On April 18, 2017, Lori V. treated with a neurologist for complaints of "frequent episodes of seizure activity" and "severe, generalized daily headaches" that she "associated with stressful

---

[5] The Court is aware that the evidence that follows post-dates the date last insured. The Court includes it to demonstrate the persistence of Lori V.'s symptoms over time and to underscore the need for the ALJ to have addressed it.

situations." [Filing No. 11-8 at 96.] She continued to take multiple prescriptions for her migraines and seizure episodes. [Filing No. 11-8 at 96.] Her neurologist noted that extensive diagnostic testing and monitoring for epileptic activity had been negative. [Filing No. 11-8 at 96.] She had reportedly stopped attending psychotherapy because of transportation issues. [Filing No. 11-8 at 96.] Her neurologist diagnosed her with pseudoseizures,[6] intractable chronic migraines, and situational depression. [Filing No. 11-8 at 98.] Her neurologist made no changes to her medication—noting that she was already on anticonvulsants for her migraines without any benefit in stopping her episodes—and strongly advised her to resume psychotherapy.

On May 3, 2017, Lori V. had an initial consultation with a new mental health provider for her relevant symptoms that had started at least five years earlier while she was working. [Filing No. 11-8 at 100.] The supervising psychologist diagnosed her with generalized anxiety disorder, major depressive disorder, "[c]onversion disorder (functional neurological symptom disorder), with attacks," and posttraumatic stress disorder. [Filing No. 11-8 at 105.]

---

[6] *See* Cleveland Clinic Epilepsy Center, *What are Non-Epileptic Seizures?*, https://my.clevelandclinic.org/-/scassets/files/org/neurological/epilepsy/patient-guides/1-guide-non-epileptic-seizures.ashx?la=en (last visited May 19, 2021). Non-epileptic seizures are diagnosed, in part, by first ruling out physical causes. "Most common are epileptic seizures, or seizures caused by sudden abnormal electrical discharges in the brain. Non-epileptic seizures, on the other hand, are not accompanied by abnormal electrical discharges. They have been previously called pseudoseizures, but that term is misleading. These seizures are quite real, and people who have them do not have conscious, voluntary control over them. Non-epileptic seizures have no identifiable physical cause, but they are believed to be physical reactions to psychological stresses. Non-epileptic seizures resemble epileptic seizures in outward appearance, even though their cause is very different. Non[-]epileptic seizures may appear to be generalized convulsions, similar to grand mal epileptic seizures, characterized by falling and shaking." *Id*. Non-epileptic seizures are an example of a somatoform disorder. "A specific traumatic event — such as physical or sexual abuse, incest, divorce, death of a loved one or other great loss or sudden change — can be identified in many patients with non-epileptic seizures. Often the underlying trauma has been blocked from consciousness." *Id*. Non-epileptic seizures differ from most psychogenic symptoms because they "can be shown with great certainty to be of psychological origin." *Id*.

On September 25, 2017, Lori V. was assessed in the emergency room by another neurologist for complaints of a headache with left-sided hemiparesis and hypesthesia. [Filing No. 11-10 at 69.]   The neurologist explained, "At this time, I suspect her symptoms are either migrainous in nature or psychogenic, possible conversion disorder.  Given her history, I am more suspicious of the latter." [Filing No. 11-10 at 69.]  The provider noted that Lori V. had a history of a traumatic physical assault.  [Filing No. 11-10 at 69.]

On October 7, 2017, Lori V. had an initial evaluation with a psychiatrist.  [Filing No. 11-9 at 24.]  She reported that she had recently had an episode of driving into a cornfield without recollection of how she had gotten there.  [Filing No. 11-9 at 24.]  She also reported details of being assaulted in 2010, which she had repressed until only the last two or three months.  [Filing No. 11-9 at 24.]

The above summary of the relevant evidence is not exhaustive but illustrative.  None of it was discussed by the ALJ.  The ALJ failed to discuss Lori V.'s mental impairments, non-epileptic seizure episodes, and migraines.  Accordingly, remand for further consideration of the record is necessary.

**B. Other Arguments**

Having found that remand is warranted based on Lori V.'s argument regarding the line of evidence discussed above, the Court declines to analyze Lori V.'s remaining arguments.  However, her statements concerning her subjective symptoms should be reevaluated—along with her reconsidered RFC—based on the entire record.

**IV.**

**CONCLUSION**

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Lori

V. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g)

(sentence 4) as detailed above.  Final Judgment will issue accordingly.

Date: 5/20/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

10